# OLD CHIEF *v.* UNITED STATES

No. 95–6556.   Argued October 16, 1996—Decided January 7, 1997

*Daniel Donovan* argued the cause for petitioner. With him on the briefs was *Anthony R. Gallagher.*

*Miguel A. Estrada* argued the cause for the United States. On the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben, Alan Jenkins,* and *Thomas E. Booth.*\*

JUSTICE SOUTER delivered the opinion of the Court.

Subject to certain limitations, 18 U. S. C. § 922(g)(1) prohibits possession of a firearm by anyone with a prior felony conviction, which the Government can prove by introducing a record of judgment or similar evidence identifying the previous offense. Fearing prejudice if the jury learns the nature of the earlier crime, defendants sometimes seek to avoid such an informative disclosure by offering to concede the fact of the prior conviction. The issue here is whether a district court abuses its discretion if it spurns such an offer and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction.[1] We hold that it does.

I

In 1993, petitioner, Old Chief, was arrested after a fracas involving at least one gunshot. The ensuing federal charges included not only assault with a dangerous weapon and using a firearm in relation to a crime of violence but violation of 18 U. S. C. § 922(g)(1). This statute makes it unlawful for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm . . . ." "[A]

---

\**Tova Indritz* and *Barbara Bergman* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae.*

[1] The standard of review applicable to the evidentiary rulings of the district court is abuse of discretion. *United States* v. *Abel,* 469 U. S. 45, 54–55 (1984).

crime punishable by imprisonment for a term exceeding one year" is defined to exclude "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices" and "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." § 921(a)(20).

The earlier crime charged in the indictment against Old Chief was assault causing serious bodily injury. Before trial, he moved for an order requiring the Government "to refrain from mentioning—by reading the Indictment, during jury selection, in opening statement, or closing argument— and to refrain from offering into evidence or soliciting any testimony from any witness regarding the prior criminal convictions of the Defendant, *except* to state that the Defendant has been convicted of a crime punishable by imprisonment exceeding one (1) year." App. 6. He said that revealing the name and nature of his prior assault conviction would unfairly tax the jury's capacity to hold the Government to its burden of proof beyond a reasonable doubt on current charges of assault, possession, and violence with a firearm, and he offered to "solve the problem here by stipulating, agreeing and requesting the Court to instruct the jury that he has been convicted of a crime punishable by imprisonment exceeding one (1) yea[r]." *Id.,* at 7. He argued that the offer to stipulate to the fact of the prior conviction rendered evidence of the name and nature of the offense inadmissible under Rule 403 of the Federal Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value. He also proposed this jury instruction:

> "The phrase 'crime punishable by imprisonment for a term exceeding one year' generally means a crime which is a felony. The phrase does not include any state offense classified by the laws of that state as a misde-

meanor and punishable by a term of imprisonment of two years or less and certain crimes concerning the regulation of business practices.

"[I] hereby instruct you that Defendant JOHNNY LYNN OLD CHIEF has been convicted of a crime punishable by imprisonment for a term exceeding one year." *Id.*, at 11.[2]

---

[2] Proposals for instructing the jury in this case proved to be perilous. We will not discuss Old Chief's proposed instruction beyond saying that, even on his own legal theory, revision would have been required to dispel ambiguity. The jury could not have said whether the instruction that Old Chief had been convicted of a crime punishable by imprisonment for more than one year meant that, as a matter of law, his conviction fell within the definition of "crime punishable by imprisonment for a term exceeding one year," or was instead merely a statement of fact, in which case the jurors could not have determined whether the predicate offense was within one of the statute's categorical exceptions, a "state . . . misdemeanor . . . punishable by a term . . . of two years or less" or a "business" crime. The District Court did not, however, deny Old Chief's motion because of the artless instruction he proposed, but because of the general rule, to be discussed below, that permits the Government to choose its own evidence.

While Old Chief's proposed instruction was defective even under the law as he viewed it, the instruction actually given was erroneous even on the Government's view of the law. The District Court charged, "You have also heard evidence that the defendant has previously been convicted of a felony. You may consider that evidence only as it may affect the defendant's believability as a witness. You may not consider a prior conviction as evidence of guilt of the crime for which the defendant is now on trial." App. 31. This instruction invited confusion. First, of course, if the jury had applied it literally there would have been an acquittal for the wrong reason: Old Chief was on trial for, among other offenses, being a felon in possession, and if the jury had not considered the evidence of prior conviction it could not have found that he was a felon. Second, the remainder of the instruction referred to an issue that was not in the case. While it is true that prior-offense evidence may in a proper case be admissible for impeachment, even if for no other purpose, Fed. Rule Evid. 609, petitioner did not testify at trial; there was no justification for admitting the evidence for impeachment purposes and consequently no basis for the District Court's suggestion that the jurors could consider the prior conviction as impeachment evidence. The fault for this error lies at least as much with Old Chief as with the District Court, since Old Chief apparently sought

The Assistant United States Attorney refused to join in a stipulation, insisting on his right to prove his case his own way, and the District Court agreed, ruling orally that, "If he doesn't want to stipulate, he doesn't have to." *Id.*, at 15–16. At trial, over renewed objection, the Government introduced the order of judgment and commitment for Old Chief's prior conviction. This document disclosed that on December 18, 1988, he "did knowingly and unlawfully assault Rory Dean Fenner, said assault resulting in serious bodily injury," for which Old Chief was sentenced to five years' imprisonment. *Id.*, at 18–19. The jury found Old Chief guilty on all counts, and he appealed.

The Ninth Circuit addressed the point with brevity:

> "Regardless of the defendant's offer to stipulate, the government is entitled to prove a prior felony offense through introduction of probative evidence. *See United States v. Breitkreutz*, 8 F. 3d 688, 690 (9th Cir. 1993) (citing *United States v. Gilman*, 684 F. 2d 616, 622 (9th Cir. 1982)). Under Ninth Circuit law, a stipulation is not proof, and, thus, it has no place in the FRE 403 balancing process. *Breitkreutz*, 8 F. 3d at 691–92.
>
> .        .        .        .        .
>
> "Thus, we hold that the district court did not abuse its discretion by allowing the prosecution to introduce evidence of Old Chief's prior conviction to prove that element of the unlawful possession charge." No. 94–30277, 1995 WL 325745, *1 (CA9, May 31, 1995) (unpublished), App. 50–51, judgt. order reported at 56 F. 3d 75 (1995).

We granted Old Chief's petition for writ of certiorari, 516 U. S. 1110 (1996), because the Courts of Appeals have divided sharply in their treatment of defendants' efforts to exclude evidence of the names and natures of prior offenses in cases like this. Compare, *e. g., United States v. Burkhart*, 545

---

some such instruction and withdrew the request only after the court had charged the jury.

F. 2d 14, 15 (CA6 1976); *United States* v. *Smith,* 520 F. 2d 544, 548 (CA8 1975), cert. denied, 429 U. S. 925 (1976); and *United States* v. *Breitkreutz,* 8 F. 3d 688, 690–692 (CA9 1993) (each recognizing a right on the part of the Government to refuse an offered stipulation and proceed with its own evidence of the prior offense), with *United States* v. *Tavares,* 21 F. 3d 1, 3–5 (CA1 1994) (en banc); *United States* v. *Poore,* 594 F. 2d 39, 40–43 (CA4 1979); *United States* v. *Wacker,* 72 F. 3d 1453, 1472–1473 (CA10 1995); and *United States* v. *Jones,* 67 F. 3d 320, 322–325 (CADC 1995) (each holding that the defendant's offer to stipulate to or to admit to the prior conviction triggers an obligation of the district court to eliminate the name and nature of the underlying offense from the case by one means or another). We now reverse the judgment of the Ninth Circuit.

## II

### A

As a threshold matter, there is Old Chief's erroneous argument that the name of his prior offense as contained in the record of conviction is irrelevant to the prior-conviction element, and for that reason inadmissible under Rule 402 of the Federal Rules of Evidence.[3] Rule 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. Rule Evid. 401. To be sure, the fact that Old Chief's prior conviction was for assault resulting in serious bodily injury rather than, say, for theft was not itself an ultimate fact, as if the statute had specifically required proof of injurious assault. But its demonstration

---

[3] "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. Rule Evid. 402.

was a step on one evidentiary route to the ultimate fact, since it served to place Old Chief within a particular subclass of offenders for whom firearms possession is outlawed by § 922(g)(1). A documentary record of the conviction for that named offense was thus relevant evidence in making Old Chief's § 922(g)(1) status more probable than it would have been without the evidence.

Nor was its evidentiary relevance under Rule 401 affected by the availability of alternative proofs of the element to which it went, such as an admission by Old Chief that he had been convicted of a crime "punishable by imprisonment for a term exceeding one year" within the meaning of the statute. The 1972 Advisory Committee Notes to Rule 401 make this point directly:

> "The fact to which the evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute." Advisory Committee's Notes on Fed. Rule Evid. 401, 28 U. S. C. App., p. 859.

If, then, relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that the other evidence has rendered it "irrelevant," but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding.[4]

---

[4] Viewing evidence of the name of the prior offense as relevant, there is no reason to dwell on the Government's argument that relevance is to be determined with respect to the entire item offered in evidence (here, the entire record of conviction) and not with reference to distinguishable subunits of that object (here, the name of the offense and the sentence received). We see no impediment in general to a district court's determination, after objection, that some sections of a document are relevant within

## B

The principal issue is the scope of a trial judge's discretion under Rule 403, which authorizes exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. Rule Evid. 403. Old Chief relies on the danger of unfair prejudice.[5]

### 1

The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. See generally 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996) (discussing the meaning of "unfair prejudice" under Rule 403). So, the Committee Notes to Rule 403 explain, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U. S. C. App., p. 860.

Such improper grounds certainly include the one that Old Chief points to here: generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as call-

---

the meaning of Rule 401, and others irrelevant and inadmissible under Rule 402.

[5] Petitioner also suggests that we might find a prosecutor's refusal to accept an adequate stipulation and jury instruction in the narrow context presented by this case to be prosecutorial misconduct. The argument is that, since a prosecutor is charged with the pursuit of just convictions, not victory by fair means or foul, any ethical prosecutor must agree to stipulate in the situation here. But any ethical obligation will depend on the construction of Rule 403, and we have no reason to anticipate related ethical lapses once the meaning of the Rule is settled.

ing for preventive conviction even if he should happen to be innocent momentarily). As then-Judge Breyer put it, "Although . . . 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance." *United States* v. *Moccia,* 681 F. 2d 61, 63 (CA1 1982). Justice Jackson described how the law has handled this risk:

> "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer* v. *United States,* 245 U. S. 559, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson* v. *United States,* 335 U. S. 469, 475–476 (1948) (footnotes omitted).

Rule of Evidence 404(b) reflects this common-law tradition by addressing propensity reasoning directly: "Evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in conformity therewith." Fed. Rule Evid. 404(b). There is, accordingly, no question that propensity would be an "improper basis" for conviction and that evidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence. Cf. 1 J. Strong, McCormick on Evidence 780 (4th ed. 1992) (hereinafter McCormick) (Rule 403 prejudice may occur, for example, when "evidence of convictions for prior, unrelated crimes may lead a juror to think that since the defendant already has a criminal record, an erroneous conviction would not be quite as serious as would otherwise be the case").

As for the analytical method to be used in Rule 403 balancing, two basic possibilities present themselves. An item of evidence might be viewed as an island, with estimates of its own probative value and unfairly prejudicial risk the sole reference points in deciding whether the danger substantially outweighs the value and whether the evidence ought to be excluded. Or the question of admissibility might be seen as inviting further comparisons to take account of the full evidentiary context of the case as the court understands it when the ruling must be made.[6] This second approach would start out like the first but be ready to go further. On objection, the court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. If an alternative

---

[6] It is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight. See, for example, *United States* v. *O'Shea*, 724 F. 2d 1514, 1517 (CA11 1984), where the appellate court approved the trial court's pretrial refusal to impose a stipulation on the Government and exclude the Government's corresponding evidence of past convictions because the trial court had found at that stage that the evidence would quite likely come in anyway on other grounds.

were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk. As we will explain later on, the judge would have to make these calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case, and the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in. It would only mean that a judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point. Even under this second approach, as we explain below, a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense. See *infra*, at 186–189.[7]

The first understanding of the Rule is open to a very telling objection. That reading would leave the party offering evidence with the option to structure a trial in whatever way would produce the maximum unfair prejudice consistent with relevance. He could choose the available alternative carrying the greatest threat of improper influence, despite the availability of less prejudicial but equally probative evidence. The worst he would have to fear would be a ruling sustaining a Rule 403 objection, and if that occurred, he could simply fall back to offering substitute evidence. This would be a strange rule. It would be very odd for the law

---

[7] While our discussion has been general because of the general wording of Rule 403, our holding is limited to cases involving proof of felon status. On appellate review of a Rule 403 decision, a defendant must establish abuse of discretion, a standard that is not satisfied by a mere showing of some alternative means of proof that the prosecution in its broad discretion chose not to rely upon.

of evidence to recognize the danger of unfair prejudice only to confer such a degree of autonomy on the party subject to temptation, and the Rules of Evidence are not so odd.

Rather, a reading of the companions to Rule 403, and of the commentaries that went with them to Congress, makes it clear that what counts as the Rule 403 "probative value" of an item of evidence, as distinct from its Rule 401 "relevance," may be calculated by comparing evidentiary alternatives. The Committee Notes to Rule 401 explicitly say that a party's concession is pertinent to the court's discretion to exclude evidence on the point conceded. Such a concession, according to the Notes, will sometimes "call for the exclusion of evidence offered to prove [the] point conceded by the opponent . . . ." Advisory Committee's Notes on Fed. Rule Evid. 401, 28 U. S. C. App., p. 859. As already mentioned, the Notes make it clear that such rulings should be made not on the basis of Rule 401 relevance but on "such considerations as waste of time and undue prejudice (see Rule 403) . . . ." *Ibid.* The Notes to Rule 403 then take up the point by stating that when a court considers "whether to exclude on grounds of unfair prejudice," the "availability of other means of proof may . . . be an appropriate factor." Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U. S. C. App., p. 860. The point gets a reprise in the Notes to Rule 404(b), dealing with admissibility when a given evidentiary item has the dual nature of legitimate evidence of an element and illegitimate evidence of character: "No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under 403." Advisory Committee's Notes on Fed. Rule Evid. 404, 28 U. S. C. App., p. 861. Thus the notes leave no question that when Rule 403 confers discretion by providing that evidence "may" be excluded, the discretionary judgment may be informed not only by assessing an evidentiary item's

twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives. See 1 McCormick 782, and n. 41 (suggesting that Rule 403's "probative value" signifies the "marginal probative value" of the evidence relative to the other evidence in the case); 22 C. Wright & K. Graham, Federal Practice and Procedure § 5250, pp. 546–547 (1978) ("The probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point").

## 2

In dealing with the specific problem raised by § 922(g)(1) and its prior-conviction element, there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant. That risk will vary from case to case, for the reasons already given, but will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning. Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious, and Old Chief sensibly worried that the prejudicial effect of his prior assault conviction, significant enough with respect to the current gun charges alone, would take on added weight from the related assault charge against him.[8]

---

[8] It is true that a prior offense may be so far removed in time or nature from the current gun charge and any others brought with it that its potential to prejudice the defendant unfairly will be minimal. Some prior offenses, in fact, may even have some potential to prejudice the Government's case unfairly. Thus an extremely old conviction for a relatively minor felony that nevertheless qualifies under the statute might strike many jurors as a foolish basis for convicting an otherwise upstanding member of the community of otherwise legal gun possession. Since the Government could not, of course, compel the defendant to admit formally the existence of the prior conviction, the Government would have to bear the risk of jury nullification, a fact that might properly drive the Government's charging decision.

The District Court was also presented with alternative, relevant, admissible evidence of the prior conviction by Old Chief's offer to stipulate, evidence necessarily subject to the District Court's consideration on the motion to exclude the record offered by the Government. Although Old Chief's formal offer to stipulate was, strictly, to enter a formal agreement with the Government to be given to the jury, even without the Government's acceptance his proposal amounted to an offer to admit that the prior-conviction element was satisfied, and a defendant's admission is, of course, good evidence. See Fed. Rule Evid. 801(d)(2)(A).

Old Chief's proffered admission would, in fact, have been not merely relevant but seemingly conclusive evidence of the element. The statutory language in which the prior-conviction requirement is couched shows no congressional concern with the specific name or nature of the prior offense beyond what is necessary to place it within the broad category of qualifying felonies, and Old Chief clearly meant to admit that his felony did qualify, by stipulating "that the Government has proven one of the essential elements of the offense." App. 7. As a consequence, although the name of the prior offense may have been technically relevant, it addressed no detail in the definition of the prior-conviction element that would not have been covered by the stipulation or admission. Logic, then, seems to side with Old Chief.

### 3

There is, however, one more question to be considered before deciding whether Old Chief's offer was to supply evidentiary value at least equivalent to what the Government's own evidence carried. In arguing that the stipulation or admission would not have carried equivalent value, the Government invokes the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as

the Government chooses to present it.  The authority usually cited for this rule is *Parr* v. *United States,* 255 F. 2d 86 (CA5), cert. denied, 358 U. S. 824 (1958), in which the Fifth Circuit explained that the "reason for the rule is to permit a party 'to present to the jury a picture of the events relied upon.  To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.'"  255 F. 2d, at 88 (quoting *Dunning* v. *Maine Central R. Co.,* 91 Me. 87, 39 A. 352, 356 (1897)).

This is unquestionably true as a general matter.  The "fair and legitimate weight" of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness.  Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent.  Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.  This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.  Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human being to prison, as it is for another to hold out conscientiously for acquittal.  When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human signifi-

cance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault. Cf. *United States* v. *Gilliam*, 994 F. 2d 97, 100–102 (CA2), cert. denied, 510 U. S. 927 (1993).

But there is something even more to the prosecution's interest in resisting efforts to replace the evidence of its choice with admissions and stipulations, for beyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about. "If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." Saltzburg, A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence, 66 Calif. L. Rev. 1011, 1019 (1978) (footnotes omitted).[9] Expectations may also arise in

---

[9] Cf. Green, "The Whole Truth?": How Rules of Evidence Make Lawyers Deceitful, 25 Loyola (LA) L. Rev. 699, 703 (1992) ("[E]videntiary rules . . . predicated in large measure on the law's distrust of juries [can] have the unintended, and perhaps ironic, result of encouraging the jury's distrust of lawyers. The rules do so by fostering the perception that lawyers are deliberately withholding evidence" (footnote omitted)). The fact that juries have expectations as to what evidence ought to be presented by a party, and may well hold the absence of that evidence against the party, is also recognized in the case law of the Fifth Amendment, which explicitly

jurors' minds simply from the experience of a trial itself. The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing. A party seemingly responsible for cloaking something has reason for apprehension, and the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.

In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

---

supposes that, despite the venerable history of the privilege against self-incrimination, jurors may not recall that someone accused of crime need not explain the evidence or avow innocence beyond making his plea. See, e. g., *Lakeside* v. *Oregon*, 435 U. S. 333, 340, and n. 10 (1978). The assumption that jurors may have contrary expectations and be moved to draw adverse inferences against the party who disappoints them undergirds the rule that a defendant can demand an instruction forbidding the jury to draw such an inference.

4

This recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has, however, virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him. As in this case, the choice of evidence for such an element is usually not between eventful narrative and abstract proposition, but between propositions of slightly varying abstraction, either a record saying that conviction for some crime occurred at a certain time or a statement admitting the same thing without naming the particular offense. The issue of substituting one statement for the other normally arises only when the record of conviction would not be admissible for any purpose beyond proving status, so that excluding it would not deprive the prosecution of evidence with multiple utility; if, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status (*i. e.,* to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed. Rule Evid. 404(b)), Rule 404(b) guarantees the opportunity to seek its admission. Nor can it be argued that the events behind the prior conviction are proper nourishment for the jurors' sense of obligation to vindicate the public interest. The issue is not whether concrete details of the prior crime should come to the jurors' attention but whether the name or general character of that crime is to be disclosed. Congress, however, has made it plain that distinctions among generic felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute. "A defendant falls within the category simply by virtue of past conviction for any [qualifying] crime ranging from possession of short lobsters, *see* 16 U. S. C. § 3372, to the most aggravated murder." *Tavares,* 21 F. 3d, at 4. The most the jury needs to know is that the conviction admitted by the defend-

ant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions. Finally, the most obvious reason that the general presumption that the prosecution may choose its evidence is so remote from application here is that proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach.

Given these peculiarities of the element of felony-convict status and of admissions and the like when used to prove it, there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence. For purposes of the Rule 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other. In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available.[10] What we have said shows why this will be

---

[10] There may be yet other means of proof besides a formal admission on the record that, with a proper objection, will obligate a district court to exclude evidence of the name of the offense. A redacted record of conviction is the one most frequently mentioned. Any alternative will, of

the general rule when proof of convict status is at issue, just as the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried.

The judgment is reversed, and the case is remanded to the Ninth Circuit for further proceedings consistent with this opinion.[11]

*It is so ordered.*

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

The Court today announces a rule that misapplies Federal Rule of Evidence 403 and upsets, without explanation, longstanding precedent regarding criminal prosecutions. I do not agree that the Government's introduction of evidence that reveals the name and basic nature of a defendant's prior felony conviction in a prosecution brought under 18 U. S. C. § 922(g)(1) "unfairly" prejudices the defendant within the meaning of Rule 403. Nor do I agree with the Court's newly minted rule that a defendant charged with violating

---

course, require some jury instruction to explain it (just as it will require some discretion when the indictment is read). A redacted judgment in this case, for example, would presumably have revealed to the jury that Old Chief was previously convicted in federal court and sentenced to more than a year's imprisonment, but it would not have shown whether his previous conviction was for one of the business offenses that do not count, under § 921(a)(20). Hence, an instruction, with the defendant's consent, would be necessary to make clear that the redacted judgment was enough to satisfy the status element remaining in the case. The Government might, indeed, propose such a redacted judgment for the trial court to weigh against a defendant's offer to admit, as indeed the Government might do even if the defendant's admission had been received into evidence.

[11] In remanding, we imply no opinion on the possibility of harmless error, an issue not passed upon below.

§ 922(g)(1) can force the Government to accept his concession to the prior conviction element of that offense, thereby precluding the Government from offering evidence on this point. I therefore dissent.

I

Rule 403 provides that a district court may exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." Certainly, Rule 403 does not permit the court to exclude the Government's evidence simply because it may hurt the defendant. As a threshold matter, evidence is excludable only if it is "unfairly" prejudicial, in that it has "an undue tendency to suggest decision on an improper basis." Advisory Committee's Note on Fed. Rule Evid. 403, 28 U. S. C. App., p. 860; see, e. g., United States v. Munoz, 36 F. 3d 1229, 1233 (CA1 1994) ("The damage done to the defense is not a basis for exclusion; the question under Rule 403 is 'one of "unfair" prejudice—not of prejudice alone'") (citations omitted), cert. denied sub nom. Martinez v. United States, 513 U. S. 1179 (1995); Dollar v. Long Mfg., N. C., Inc., 561 F. 2d 613, 618 (CA5 1977) ("'[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair'"), cert. denied, 435 U. S. 996 (1978). The evidence tendered by the Government in this case—the order reflecting petitioner's prior conviction and sentence for assault resulting in serious bodily injury, in violation of 18 U. S. C. § 1153 and 18 U. S. C. § 113(f) (1988 ed.)—directly proved a necessary element of the § 922(g)(1) offense, that is, that petitioner had committed a crime covered by § 921(a)(20). Perhaps petitioner's case was damaged when the jury discovered that he previously had committed a felony and heard the name of his crime. But I cannot agree with the Court that it was unfairly prejudicial for the Government to establish an essential element

of its case against petitioner with direct proof of his prior conviction.

The structure of § 922(g)(1) itself shows that Congress envisioned jurors' learning the name and basic nature of the defendant's prior offense. Congress enacted § 922(g)(1) to prohibit the possession of a firearm by any person convicted of "a crime punishable by imprisonment for a term exceeding one year." Section 922(g)(1) does not merely prohibit the possession of firearms by "felons," nor does it apply to all prior felony convictions. Rather, the statute excludes from § 922(g)(1)'s coverage certain business crimes and state misdemeanors punishable by imprisonment of two years or less. § 921(a)(20). Within the meaning of § 922(g)(1), then, "a crime" is not an abstract or metaphysical concept. Rather, the Government must prove that the defendant committed a *particular* crime. In short, under § 922(g)(1), a defendant's prior felony conviction connotes not only that he is a prior felon, but also that he has engaged in specific past criminal conduct.

Even more fundamentally, in our system of justice, a person is not simply convicted of "a crime" or "a felony." Rather, he is found guilty of a specified offense, almost always because he violated a specific statutory prohibition. For example, in the words of the order that the Government offered to prove petitioner's prior conviction in this case, petitioner "did knowingly and unlawfully assault Rory Dean Fenner, said assault resulting in serious bodily injury, in violation of Title 18 U. S. C. §§ 1153 and 113(f)." App. 18. That a variety of crimes would have satisfied the prior conviction element of the § 922(g)(1) offense does not detract from the fact that petitioner committed a specific offense. The name and basic nature of petitioner's crime are inseparable from the fact of his earlier conviction and were therefore admissible to prove petitioner's guilt.

The principle is illustrated by the evidence that was admitted at petitioner's trial to prove the other element of the

§ 922(g)(1) offense—possession of a "firearm." The Government submitted evidence showing that petitioner possessed a 9-mm. semiautomatic pistol. Although petitioner's possession of any number of weapons would have satisfied the requirements of § 922(g)(1), obviously the Government was entitled to prove with specific evidence that petitioner possessed the weapon he did. In the same vein, consider a murder case. Surely the Government can submit proof establishing the victim's identity, even though, strictly speaking, the jury has no "need" to know the victim's name, and even though the victim might be a particularly well loved public figure. The same logic should govern proof of the prior conviction element of the § 922(g)(1) offense. That is, the Government ought to be able to prove, with specific evidence, that petitioner committed a crime that came within § 922(g)(1)'s coverage.

The Court never explains precisely why it constitutes "unfair" prejudice for the Government to directly prove an essential element of the § 922(g)(1) offense with evidence that reveals the name or basic nature of the defendant's prior conviction. It simply notes that such evidence may lead a jury to conclude that the defendant has a propensity to commit crime, thereby raising the odds that the jury would find that he committed the crime with which he is currently charged. With a nod to the part of Rule 404(b) that says "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," the Court writes:

> "There is, accordingly, no question that propensity would be an 'improper basis' for conviction and that evidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence." *Ante*, at 182.

A few pages later, it leaps to the conclusion that there can be "no question that evidence of the name or nature of the

prior offense generally carries a risk of unfair prejudice to the defendant." *Ante*, at 185.

Yes, to be sure, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But Rule 404(b) does not end there. It expressly contemplates the admission of evidence of prior crimes for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The list is plainly not exhaustive, and where, as here, a prior conviction is an element of the charged offense, neither Rule 404(b) nor Rule 403 can bar its admission. The reason is simple: In a prosecution brought under § 922(g)(1), the Government does not submit evidence of a past crime to prove the defendant's bad character or to "show action in conformity therewith." It tenders the evidence as direct proof of a necessary element of the offense with which it has charged the defendant. To say, as the Court does, that it "unfairly" prejudices the defendant for the Government to establish its § 922(g)(1) case with evidence showing that, in fact, the defendant did commit a prior offense misreads the Rules of Evidence and defies common sense.

Any incremental harm resulting from proving the name or basic nature of the prior felony can be properly mitigated by limiting jury instructions. Federal Rule of Evidence 105 provides that when evidence is admissible for one purpose, but not another, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Indeed, on petitioner's own motion in this case, the District Court instructed the jury that it was not to "'consider a prior conviction as evidence of guilt of the crime for which the defendant is now on trial.'" Brief for United States 32. The jury is presumed to have followed this cautionary instruction, see *Shannon* v. *United States*, 512 U. S. 573, 585 (1994), and the instruction offset whatever prejudice

might have arisen from the introduction of petitioner's prior conviction.

## II

The Court also holds that, if a defendant charged with violating § 922(g)(1) concedes his prior felony conviction, a district court abuses its discretion if it admits evidence of the defendant's prior crime that raises the risk of a verdict "tainted by improper considerations." See *ante*, at 174. Left unexplained is what, exactly, it was about the order introduced by the Government at trial that might cause a jury to decide the case improperly. The order offered into evidence (which the Court nowhere in its opinion sets out) stated, in relevant part:

> "And the defendant having been convicted on his plea of guilty of the offense charged in Count II of the indictment in the above-entitled cause, to-wit: That on or about the 18th day of December 1988, at Browning, in the State and District of Montana, and on and within the exterior boundaries of the Blackfeet Indian Reservation, being Indian country, JOHNNY LYNN OLD CHIEF, an Indian person, did knowingly and unlawfully assault Rory Dean Fenner, said assault resulting in serious bodily injury, in violation of Title 18 U. S. C. §§ 1153 and 113(f)." App. 18.

The order went on to say that petitioner was sentenced for a term of 60 months' imprisonment, to be followed by two years of supervised release.

Why, precisely, does the Court think that this item of evidence raises the risk of a verdict "tainted by improper considerations"? Is it because the jury might learn that petitioner assaulted someone and caused serious bodily injury? If this is what the Court means, would evidence that petitioner had committed some other felony be admissible, and if so, what sort of crime might that be? Or does the Court object to the order because it gave a few specifics about the

assault, such as the date, the location, and the victim's name? Or perhaps the Court finds that introducing the order risks a verdict "tainted by improper considerations" simply because the § 922(g)(1) charge was joined with counts charging petitioner with using a firearm in relation to a crime of violence, in violation of 18 U. S. C. § 924(c), and with committing an assault with a dangerous weapon, in violation of 18 U. S. C. § 1153 and 18 U. S. C. § 113(c) (1988 ed.)?   Under the Court's nebulous standard for admission of prior felony evidence in a § 922(g)(1) prosecution, these are open questions.

More troubling still is the Court's retreat from the fundamental principle that in a criminal prosecution the Government may prove its case as it sees fit.   The Court reasons that, in general, a defendant may not stipulate away an element of a charged offense because, in the usual case, "the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story."   *Ante,* at 190.   The rule has, however, "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him."   *Ibid.* Thus, concludes the Court, there is no real difference between the "evidentiary significance" of a defendant's concession and that of the Government's proof of the prior felony with the order of conviction.   *Ante,* at 191.   Since the Government's method of proof was more prejudicial than petitioner's admission, it follows that the District Court should not have admitted the order reflecting his conviction when petitioner had conceded that element of the offense.   *Ibid.*

On its own terms, the argument does not hold together. A jury is as likely to be puzzled by the "missing chapter" resulting from a defendant's stipulation to his prior felony conviction as it would be by the defendant's conceding any other element of the crime.   The jury may wonder why it has not been told the name of the crime, or it may question why the defendant's firearm possession was illegal, given the

tradition of lawful gun ownership in this country, see *Staples* v. *United States,* 511 U. S. 600, 610–612 (1994). "'Doubt as to the criminality of [the defendant's] conduct may influence the jury when it considers the possession element.'" *United States* v. *Barker,* 1 F. 3d 957, 960 (1993) (quoting *United States* v. *Collamore,* 868 F. 2d 24, 28 (CA1 1989)), modified, 20 F. 3d 365 (CA9 1994).

Second, the Court misapprehends why "it has never been seriously suggested that [a defendant] can . . . compel the Government to try the case by stipulation." *Singer* v. *United States,* 380 U. S. 24, 35 (1965). It may well be that the prosecution needs "evidentiary depth to tell a continuous story" in order to prove its case in a way a jury will accept. *Ante,* at 190. But that is by no means the only or the most important reason that a defendant may not oblige the Government to accept his concession to an element of the charged offense. The Constitution requires a criminal conviction to rest upon a jury determination that the defendant is guilty of every element of the crime of which he is charged beyond a reasonable doubt. *United States* v. *Gaudin,* 515 U. S. 506, 510 (1995) (citing *Sullivan* v. *Louisiana,* 508 U. S. 275, 277 (1993)); see also *Court of Ulster Cty.* v. *Allen,* 442 U. S. 140, 156 (1979) ("[I]n criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt"). "A simple plea of not guilty, Fed. Rule Crim. Proc. 11, puts the prosecution to its proof as to all elements of the crime charged . . . ." *Mathews* v. *United States,* 485 U. S. 58, 64–65 (1988). Further, a defendant's tactical decision not to contest an essential element of the crime does not remove the prosecution's burden to prove that element. *Estelle* v. *McGuire,* 502 U. S. 62, 69 (1991). At trial, a defendant may thus choose to contest the Government's proof on every element; or he may concede some elements and contest others;

or he may do nothing at all. Whatever his choice, the Government still carries the burden of proof beyond a reasonable doubt on *each* element.

It follows from these principles that a defendant's stipulation to an element of an offense does not remove that element from the jury's consideration. The usual instruction regarding stipulations in a criminal case reflects as much: "When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts." 1 E. Devitt, C. Blackmar, M. Wolff, & K. O'Malley, Federal Jury Practice and Instructions § 12.03, p. 333 (4th ed. 1992). Obviously, we are not dealing with a stipulation here. A stipulation is an agreement, and no agreement was reached between petitioner and the Government in this case. Does the Court think a different rule applies when the defendant attempts to stipulate, over the Government's objection, to an element of the charged offense? If so, that runs counter to the Constitution: The Government must prove every element of the offense charged beyond a reasonable doubt, *In re Winship*, 397 U. S. 358, 361 (1970), and the defendant's strategic decision to "agree" that the Government need not prove an element cannot relieve the Government of its burden, see *Estelle, supra,* at 69–70. Because the Government bears the burden of proof on every element of a charged offense, it must be accorded substantial leeway to submit evidence of its choosing to prove its case.

Also overlooked by the Court is the fact that, in "conceding" that he has a prior felony conviction, a defendant may be trying to take the issue from the jury altogether by effectively entering a partial plea of guilty, something we have never before endorsed. Federal Rule of Criminal Procedure 23(a) does not permit a defendant to waive a jury trial unless the Government consents, and we have upheld the provision as constitutional. *Singer, supra,* at 37. "The Constitution

recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result." 380 U. S., at 36. A defendant who concedes the prior conviction element of the § 922(g)(1) offense may be effectively trying to waive his right to a jury trial on that element. Unless the Government agrees to this waiver, it runs afoul of Rule 23(a) and *Singer*.

## III

The Court manufactures a new rule that, in a § 922(g)(1) case, a defendant can force the Government to accept his admission to the prior felony conviction element of the offense, thereby precluding the Government from offering evidence to directly prove a necessary element of its case. I cannot agree that it "unfairly" prejudices a defendant for the Government to prove his prior conviction with evidence that reveals the name or basic nature of his past crime. Like it or not, Congress chose to make a defendant's prior criminal conviction one of the two elements of the § 922(g)(1) offense. Moreover, crimes have names; a defendant is not convicted of some indeterminate, unspecified "crime." Nor do I think that Federal Rule of Evidence 403 can be read to obviate the well accepted principle, grounded in both the Constitution and in our precedent, that the Government may not be forced to accept a defendant's concession to an element of a charged offense as proof of that element. I respectfully dissent.